1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11 KATHLEEN H. HOFSTROM,      )   NO. CV 12-02194-AS
                               )

12              Plaintiff,      )
                               )

13     v.                  )   **MEMORANDUM AND OPINION**
                               )

14 CAROLYN W. COLVIN,        )
Acting Commissioner of the    )

15 Social Security Administration,  )
                               )

16             Defendant.      )
                               )

17 _____)

18

19                        **PROCEEDINGS**

20

21      Plaintiff filed a complaint on December 19, 2012, seeking review of

22 the Commissioner's denial of disability benefits.  Defendant filed an

23 Answer to the Complaint on July 18, 2013.  On August 22, 2013, the

24 matter was transferred and referred to the current Magistrate Judge.

25 The parties thereafter consented to proceed before a United States

26 Magistrate Judge.  On November 6, 2013, the parties filed a Joint

27 Stipulation ("Joint Stip.") setting forth their respective positions on

28 Plaintiff's claim.  The Court has taken this matter under submission

without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; See "Order," filed December 21, 2012.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, a former nurse and phlebotomist, asserts disability since October 21, 2007, based on alleged physical and mental impairments (Administrative Record ("A.R.") 11).   The Administrative Law Judge ("ALJ") examined the records and heard testimony from Plaintiff, and a vocational expert (A.R. 34-62).   The ALJ made the following findings: (1) Plaintiff has a severe medically determinable impairment, namely anticardiolipin antibodies syndrome, deep vein thrombosis, pulmonary embolism, status post inferior vena cava filter placement, depressive disorder NOS, and cognitive disorder NOS (A.R. 11-12); (2) Plaintiff's impairments do not meet or equal a listed impairment (A.R. 13-14); (3) Plaintiff retains the residual functional capacity to perform light work with some restrictions (A.R. 14-20);  (4) Plaintiff lacks the residual functional capacity ("RFC") to perform her past relevant work  (A.R. 21); and (5) Plaintiff is able to perform jobs that exist in significant numbers in the national economy.  (A.R. 22).   The Appeals Council considered additional information but denied review, rendering the ALJ's decision the final decision of the Administration.   (A.R. 1, 5). Plaintiff contends that  the ALJ's Mental Residual Functional Capacity findings are not supported by substantial evidence. (See Joint Stip. at 5-9).

//

//

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards.  See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id. (citing Jamerson, 112 F.3d at 1066; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)).  To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Where, as here, the Appeals Council considered additional material but denied review, the additional material becomes part of the Administrative Record for purposes of the Court's analysis.  See Brewes v. Commissioner, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the

Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence") (expressly adopting Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993)); Taylor v. Commissioner, 659 F.3d 1228, 1231 (9th Cir. 2011) (courts may consider evidence presented for the first time to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error"); Penny v. Sullivan, 2 F.3d 953, 957 n.7 (9th Cir. 1993) ("the Appeals Council considered this information and it became part of the record we are required to review as a whole"); see generally 20 C.F.R. §§ 404.970(b), 416.1470(b).

**DISCUSSION**

**A.   Applicable Law**

Three types of physicians may offer opinions in Social Security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.

4

1    Id.; see also Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)

2    (treating physician's conclusions "must be given substantial weight").

3    The ALJ may only reject a treating or examining physician's

4    uncontradicted medical opinion based on "clear and convincing reasons."

5    Lester, 81 F.3d at 830-31.  Where such an opinion is contradicted,

6    however, it may only be rejected for "specific and legitimate reasons

7    that are supported by substantial evidence in the record." Id.  The

8    opinion of a nonexamining physician cannot by itself constitute

9    substantial evidence justifying the rejection of an examining

10   physician's opinion.

11

12   **B.   Relevant Facts**

13

14   Two doctors evaluated Plaintiff's mental and emotional limitations.

15   On February 11, 2010, Dr. Robin Campbell, a clinical psychologist,

16   conducted a consultative psychological examination.  (A.R. 598-603).

17   She reported that Plaintiff is able to do household chores, run errands,

18   shop, and cook.  (A.R. 600).  Plaintiff denied suffering from depression

19   or anxiety but said she is "more forgetful, 'spacey,' and fatigued."

20   (A.R. 599).

21

22   Dr. Campbell found that there was "no evidence of memory

23   impairment" (A.R. 600), and that [Plaintiff] had no difficulties in

24   attention. Her concentration appeared to be adequate for conversation

25   and time-limited assessment tasks (A.R. 601).  Dr. Campbell concluded

26   that Plaintiff would have "no impairment in understanding remembering,

27   and carrying out short, simple instructions. . . is unimpaired in her

28

5

ability to make judgements on simple, work-related decisions . . . mild to moderate difficulty in relating appropriately to the public, supervisors, and co-workers secondary to depression . . .[and Plaintiff's] ability to withstand the stress and changes associated with an 8-hour workday and day-to-day work activities is moderately impaired." (A.R. 602).[1] Finally, the diagnostic testing administered by Dr. Campbell showed that, other than "some deficits in memory," the results were consistent with her conclusions regarding Plaintiff's mental and functional limitations. (A.R. 601-602).

On October 26, 2010, Dr. Kent Jordan, a psychiatrist, conducted a consultative psychiatric examination. (A.R. 18; see also A.R. 656-662). Plaintiff told him that she was "short," "irritable," and, at times, "depressed" and was experiencing "panic" and difficulty sleeping. (A.R. 657). Plaintiff also reported using marijuana and being "a pharmaceutical junky," explaining that she takes high doses of prescription opioids including methadone and oxycodone. (A.R. 658). Dr. Jordan observed that Plaintiff slurred her speech, which, along with her mild sustained labile dysphoric affect, was consistent with prescription opioid abuse. (A.R. 659). Despite her mild abuse of prescription medication, Dr. Jordan found that Plaintiff's overall thinking and concentration skills were within normal limits and, therefore, that her cognitive functioning was not impaired. (A.R. 659). Dr Jordan found "no abnormalities of cognition or interaction except for 'borderline' difficulties with immediate recall of auditory material."

---

[1]    Dr. Campbell's findings were affirmed by Dr. Loomis, a non-examining doctor. (A.R. 617).

1  (A.R. 660).

2

3        Dr. Jordan also found that Plaintiff appeared to "significantly
4  embellish the severity of [her] cognitive and emotional problems" and
5  "possibly fabricated cognitive impairments." (A.R. 656). He found "no
6  objective evidence of any deficits of any concentration or attention."
7  (A.R. 656). He concluded that:

8

9        As assessed by objective findings and observations during this
10       evaluation probable work functioning would at most be mildly
11       impaired in a few areas. [Plaintiff] could perform detailed
12       and complex task on a sustained basis, cognition was intact.
13       She could not maintain regular attendance and perform work
14       consistently . . . She could probably do at least moderately
15       detailed and complex task on a sustained work basis without
16       special supervision. Likewise, she could complete her normal
17       workday and workweek. She would be able to accept
18       instructions from supervisors as she adequately accepted
19       instructions from the evaluator. However, she might have some
20       mild problems interacting with coworkers and the public as
21       [Plaintiff] had some mild problems interacting with the
22       examiner due to labile dysphoric affect. Finally she would
23       have some mild problems dealing with the usual stressors of
24       competitive employment as she had some mild problems dealing
25       even with the emotionally neutral stressors of this
26       evaluation.

27

28

1    (A.R. 661).

2

3    Despite his findings that that Plaintiff's work functioning would
4    be, at most, "mildly impaired" (A.R. 661), that her reports of
5    impairments were "possibly fabricated," and that "during this evaluation
6    there was no objective evidence of any deficits of any concentration or
7    attention" (A.R. 656), Dr. Jordan concluded that that "[Plaintiff's]
8    reports of being unable to work in part because of impaired
9    concentration and attention and memory were substantiated by objective
10   findings during this evaluation."[2]  (A.R. 661).  The ALJ discounted this
11   statement in assessing Plaintiff's Mental Residual Functional Capacity,
12   explaining that Dr. Jordan's opinion was contradicted by the objective
13   evidence and the findings of Dr. Robin Campbell.  (See A.R. 20).  The
14   ALJ ultimately concluded that Plaintiff could perform light work with
15   some restrictions.  (See A.R. 20; see also A.R. 14).

16

17   C.   Analysis

18

19   Because Dr. Jordan's opinion that Plaintiff's was unable to work
20   was contradicted by the findings and conclusions of Dr. Campbell, the
21   ALJ was required to provide "specific and legitimate reasons" for

22   _____

23   [2]   The full sentence reads: "However the prescription
     opioid use was not sufficient to impair cognition and the
24   claimant's reports of being unable to work in part because of
     impaired concentration and attention and memory were
25   substantiated by objective finding during this evaluation."
     (A.R. 661).  The strange phrasing of this sentence and Dr.
26   Jordan's report as a whole suggests that what Plaintiff
     characterizes as Dr. Jordan's "opinion" is actually a
27   typographical error, i.e., the accidental omission of the word
     'not' before the word 'substantiated.'

28

rejecting Dr. Jordan's opinion. <u>Lester</u>, 81 F.3d at 830. As set forth below, the ALJ met this requirement.

First, the ALJ noted that Plaintiff's allegations about her mental impairments were not reliable, citing Plaintiff's own inconsistent statements regarding her subjective complaints and alleged functional limitations and Dr. Jordan's observation that Plaintiff appeared to be embellishing or fabricating her psychiatric symptoms. (<u>See</u> A.R. 19, 656). Second, the ALJ pointed out that Dr. Campbell's conclusions about Plaintiff's ability to work were supported by her examination and the tests she administered to Plaintiff. (<u>See</u> A.R. 20). Third, the ALJ noted that Plaintiff's admitted activities of daily living and the social interactions required to perform those activities were consistent with those necessary for obtaining and maintaining employment and therefore, undermined Plaintiff's allegations regarding her disabling limitations. (A.R. 18). Fourth, the ALJ stated that the "objective evidence as a whole," presumably including Dr. Jordan's own clinical findings, did not support Dr. Jordan's opinion. (A.R. 20). These are specific and legitimate reasons for rejecting Dr. Jordan's opinion.

The Court also notes that Dr. Jordan's opinion that Plaintiff is unable to work cannot be reconciled with his own clinical findings. Dr. Jordan determined that Plaintiff's work functioning was, at most, "mildly impaired," that her reports of impairments were "possibly fabricated," and that there was no objective evidence to support her claims. (<u>Compare</u> A.R. 661 <u>with</u> A.R. 656). Because Dr. Jordan's clinical findings do not support his own opinion that Plaintiff's mental

impairments rendered her unable to work, the ALJ was not obligated to accept it.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1045 (9th Cir. 2007); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

As stated above, to determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny, 2 F.3d at 956). "[S]ubstantial evidence" exists if there is "relevant evidence which a reasonable person might accept as adequate to support [the] conclusion." Reddick, 157 F.3d at 720 (citations omitted).

In this case, a clinical psychologist and a psychiatrist both examined Plaintiff and made similar clinical findings. Dr. Campbell, the clinical psychologist, reached a conclusion that was supported by those clinical findings. The psychiatrist, Dr. Jordan, reached a conclusion that was not supported by any clinical findings and, therefore, did not need to be accepted by the ALJ. Accordingly, the objective evidence overwhelmingly supported the ALJ's finding that Plaintiff's mental impairments did not render her unable to work.

The record does not contain any meaningful contradictory evidence. Plaintiff, her husband, and her daughter completed Function Reports

discussing Plaintiff's impairments, symptoms, and limitations, but they do not describe severe impairments in memory and concentration. For example, whereas Plaintiff provided extensive information about her physical impairments on her Function Report, she made only cursory references to her alleged cognitive disorder. (<u>See generally</u> A.R. 204-211). Specifically, she stated that she can pay attention for about ten minutes and does not follow written and spoken instructions "as well as [she] used to." (A.R. 209). Similarly, after questioning Plaintiff at length about her physical impairments, the ALJ asked her if there was anything else that might prevent her from working, and Plaintiff answered in the negative instead of explaining her alleged cognitive impairments. (A.R. 58-59).

Plaintiff's husband and daughter also neglected to mention any significant impairments in Plaintiff's cognitive abilities. Plaintiff's husband stated that she can "always" pay attention and is "good" at following written and spoken instructions and at handling changes in routine. (A.R. 193-94). He also mentioned that Plaintiff enjoys playing board games and doing word searches. (A.R. 192). Plaintiff's daughter indicated that any lapses in Plaintiff's ability to concentrate were due to her physical pain, not a cognitive disorder. (<u>See</u> A.R. 201 (stating that Plaintiff can concentrate "for about 10 minutes depending on pain level)).

In light of this record, the ALJ's finding that Plaintiff has the mental residual functional capacity to perform "simple repetitive tasks" is supported by the objective evidence as a whole and is not

meaningfully contradicted by Plaintiff or any of the lay witnesses. Accordingly, the Court finds that the Commissioner's mental residual functional capacity assessment is supported by substantial evidence.

**CONCLUSION**

For all of the foregoing reasons, the decision of the Commission is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: April 17, 2014

_____/S/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE